E-FILED
Tuesday, 13 September, 2022  03:01:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| KENNETH SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01231-SLD-JEH |
| | ) | |
| JENNIFER PARKINSON and VILLAGE OF MINIER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

Before the Court are Defendant Jennifer Parkinson's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) ("Parkinson Motion to Dismiss"), ECF No. 58; Plaintiff Kenneth Simmons's motion for costs of service ("Motion for Service Costs"), ECF No. 61; Plaintiff's motion for a standing order ("Motion for Standing Order"), ECF No. 63; Plaintiff's motion to consider ("First Motion to Consider"), ECF No. 65; Parkinson and Defendant Village of Minier's ("Minier") motion to strike the First Motion to Consider ("First Motion to Strike"), ECF No. 67; Plaintiff's motion to consider ("Second Motion to Consider"), ECF No. 75; and Defendants' motion to strike the Second Motion to Consider and to bar future such motion practice ("Second Motion to Strike"), ECF No. 76.  For the following reasons, the Parkinson Motion to Dismiss is DENIED, the Motion for Service Costs is DENIED, the Motion for Standing Order is DENIED, the First Motion to Consider is DENIED, the First Motion to Strike is DENIED, the Second Motion to Consider is DENIED, and the Second Motion to Strike is DENIED.

1

## BACKGROUND

I.      **Factual Background[1]**

On July 7, 2018, Parkinson, a Minier police officer, was dispatched to Plaintiff's house because of a confrontation between Plaintiff and a group of youths resulting from certain videos Plaintiff had posted online.  Plaintiff was sitting on his porch when Parkinson arrived.  He told her, "I am not going to talk to you so you might as well take a fucking hike" and "you heard me[,] take the fuck off, I am not talking to you [sic]."  Am. Compl. 4, ECF No. 12 (quotation marks omitted).  Parkinson waved her hand at him as if she wanted him to come towards her; Plaintiff refused.  She then entered his property and said, "[K]en[,] come with me now or I can go get a warrant."  *Id*. (quotation marks omitted).  Parkinson informed Plaintiff that he was under arrest and instructed him to put his hands behind his back.  Plaintiff did so but stated that he was disabled and needed his mobility device, a cane, and that he would need to have his hands in front of his body to use it.  He informed Parkinson that the cane was just inside the door.  Parkinson said that "the jail would not let [him] have it" and proceeded to handcuff him behind his back.  *Id*. (quotation marks omitted).  Plaintiff told her that "she was hurting [his] wrist that [he had] had repaired."  *Id*. (quotation marks omitted).

Another police officer, Aaron Hodgson, arrived and ordered Parkinson to remove the handcuffs.  Hodgson stated that the officers would use a transport belt and secure only one of Plaintiff's wrists to bring him to the jail.  While Hodgson was retrieving the transport belt, Parkinson told Plaintiff that he was being arrested for disorderly conduct due to his confrontation with the youths.  She also told him that she "did not like a video [Plaintiff] posted on [YouTube]

---

[1] At the motion to dismiss stage, the court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff."  *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).  Thus, the factual background is drawn from Plaintiff's amended complaint, ECF No. 12.

calling her a lazy assed cop [sic]" and stated that "if [he] removed the video [of] her and the videos of the kids [he] would not be arrested." *Id.* (capitalization omitted).  Plaintiff responded, "fuck off bitch." *Id.* (quotation marks omitted).  Parkinson "became immediately angry" and twisted Plaintiff's wrist downward, causing him to fall to his knees and then to his face. *Id.*

As a result of the fall, Plaintiff spent over four hours in the emergency room and experienced complex tears in both knees and a Baker's cyst in the left knee.  He also ended up with a scar from the handcuffs.  While at the hospital, Parkinson told Plaintiff that if he removed the videos, his wife could pick him up from the hospital with a notice to appear, presumably instead of being sent to jail.  Plaintiff responded by insulting Parkinson and stating that he would "sue her and the police [department]." *Id.* at 5.  Parkinson told him that "the chief of [the] Minier police [department] told her that she could put her hands on [Plaintiff] anytime because a judge[] . . . had made clear [Plaintiff] would be the one to pay." *Id.* (quotation marks omitted).  She then laughed and charged him with a second offense.  Parkinson did not leave Plaintiff's side while he was in the emergency room, even when Plaintiff was being undressed by the nurse.

Prior to his first court date, Plaintiff was notified by the Assistant State's Attorney that the charges against him were being dismissed.

## II.    Procedural History

Plaintiff, proceeding *pro se*, initiated this suit on July 8, 2019, bringing claims against Minier, Parkinson, Hodgson, and United States District Judge James Shadid.  Compl. 2–8, ECF No. 1.  An amended complaint was filed on February 18, 2020, alleging similar claims. *See* Am. Compl.  At merit review, the Court granted Plaintiff in forma pauperis ("IFP") status and dismissed Plaintiff's claim against Judge Shadid with prejudice, dismissed without prejudice his claims against Parkinson and Hodgson in their official capacities, and found that Plaintiff had

sufficiently alleged an Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213, Title II claim against Minier and a battery claim against Parkinson.  Feb. 18, 2020 Order 4–9, ECF No. 11.  After neither Minier nor Parkinson returned a signed waiver of service of summons, Magistrate Judge Jonathan E. Hawley directed the U.S. Marshal to serve the two Defendants and extended the time for service.  July 30, 2020 Text Order.

Minier subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), arguing that the ADA claim against it should be dismissed because Plaintiff had failed to properly and timely serve his lawsuit.  Minier Mot. Dismiss 1, ECF No. 20.  The Court denied the motion to dismiss and extended the deadline to serve both Minier and Parkinson to November 30, 2021.  Sept. 30, 2021 Order 10, ECF No. 46.  Minier was served on November 9, 2021, *see* Minier Executed Summons, ECF No. 51, and Parkinson was served on November 10, 2021, *see* Parkinson Executed Summons, ECF No. 54.

The instant motions followed.

## DISCUSSION

## I.     Plaintiff's Motions to Consider and Defendants' Motions to Strike Motions to Consider

While not made explicit, it appears that Plaintiff's First Motion to Consider is intended as a reply to Defendants' response to Plaintiff's Motion for Service Costs, as it references statements made in Defendants' response to that motion.  *See* First Mot. Consider 1–2.  As Plaintiff filed the reply as a motion, the Court will construe it as a motion for leave to file a reply to Defendants' response.  "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  Nothing in the

4

First Motion to Consider would be helpful to the Court in resolving the Motion for Service Costs as the Court resolves that motion on grounds not discussed by the First Motion to Consider. *See infra* Section II. As such, the Court denies the First Motion to Consider.

Defendants move to strike the First Motion to Consider, arguing that Plaintiff did not seek leave of court to file a reply, as required under the Local Rules. First Mot. Strike 1–2; *see* Civil LR 7.1(B)(3) (providing that, for all motions not for summary judgment, "[n]o reply to the response is permitted without leave of Court"). Because the Court construes the First Motion to Consider as a motion for leave to file a reply, it does not violate the Local Rules, and the First Motion to Strike is therefore denied.[2]

Plaintiff filed his Second Motion to Consider on March 16, 2022. From the language of the document, it appears that Plaintiff is intending to respond to something, but it is entirely unclear to what. *See* Second Mot. Consider 1 (making arguments in response to various "claim[s]" that "[t]he attorney of record" made). In response, Defendants filed their Second Motion to Strike, arguing that the Second Motion to Consider is an unauthorized supplemental response to the Parkinson Motion to Dismiss and must be stricken. Second Mot. Strike 3. They also ask that the Court "enter an Order barring [Plaintiff] from continuing to file motions that fail to comply with the Federal Rules of Civil Procedure." *Id.*

Although the Court cannot tell to what Plaintiff intends to respond or reply, the Court will not consider the material in the Second Motion to Consider. Construing it as a motion for leave to file a reply, the Court denies the motion because, as the Court cannot tell to what the motion pertains, it is clearly not helpful to the Court. *See Petrakis*, 2011 WL 5930469, at *8.

---

[2] Defendants also argue that the First Motion to Consider should be stricken because it contains offensive and scandalous matter. First Mot. Strike 2–4. Because the Court denies Plaintiff's First Motion to Consider, construed as a motion for leave to file a reply, and thus does not permit the reply to stand, it considers this sufficient to address Defendants' concerns.

Construing it as a motion for leave to file a supplemental response to the Parkinson Motion to Dismiss, the Court likewise denies it, as it does not comply with the Local Rules on timely responses—the Parkinson Motion to Dismiss was filed more than three months before the Second Motion to Consider—and does not explain why a late response is necessary. *See* Civil LR 7.1(B)(2) (requiring responses to all motions not for summary judgment to be filed within 14 days of service of the motion). Because the Second Motion to Consider is denied, the Court does not find it necessary to strike the document and therefore denies Defendants' request to strike it.

At this time, the Court denies Defendants' supplemental request to bar Plaintiff from subsequent filings that violate the Local Rules. As noted above, the Court construes both the First and Second Motions to Consider as motions for leave to file, which Plaintiff is permitted to present to the Court under the Local Rules. *See* Civil LR 7.1(B)(3); *id*. 7.1(F). Plaintiff is on notice of his need to comply with the Local Rules. *See Pearl Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) ("[P]ro se litigants are not excused from compliance with procedural rules."). Should Plaintiff file documents in the future which do not comply with the Local Rules, Defendants may resubmit their request to the Court.

## II.     Plaintiff's Motion for Service Costs

In his Motion for Service Costs, Plaintiff asks that the Court impose the costs of service on Minier and Parkinson because of their failure to waive service, pointing to his status as a federal taxpayer as a basis for the request as he "object[s] to the taxpayer covering these costs." Mot. Service Costs 1. Minier and Parkinson oppose the motion, arguing that Plaintiff does not have standing to seek the imposition of costs and, further, that neither Defendant is subject to the penalties set forth in Federal Rule of Civil Procedure 4 for refusing to sign a waiver of service. Resp. Mot. Service Costs 2–5, ECF No. 64.

6

The Court declines to impose service costs on either Defendant.  Because Plaintiff is
proceeding IFP, the U.S. Marshal, not he, handled service, including the accompanying costs.
*See* 28 U.S.C. § 1915(d); Sept. 30, 2021 Order 10 (directing the Clerk to forward the summonses
and copies of the complaint to the U.S. Marshal for service).  His status as a federal taxpayer
does not grant him the ability to seek redress on behalf of the U.S. Marshal.  *See Gladstone,
Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (holding that, under the doctrine of
standing, a party "must assert his own legal interests rather than those of third parties"); *see Hein
v. Freedom From Religion Found., Inc*., 551 U.S. 587, 599 (2007) (holding that a federal
taxpayer's interest in how federal funds are used "is too generalized and attenuated to support . . .
standing).[3]  As such, Plaintiff's Motion for Service Costs is denied.

### III.  Plaintiff's Motion for Standing Order

Plaintiff also moves for a standing order giving him 21 days to respond to any Court
order or filing by Defendants.  Mot. Standing Order 1.  He asserts that this is necessary because
the United States Postal Service cannot be relied upon to deliver his filings to the Court on time;
to support this contention, he points to his response to Parkinson's motion to dismiss, which, he

---

[3] Even if Plaintiff could make such a request on behalf of the U.S. Marshal, the Court would find the imposition of
costs inappropriate here.  Minier is a municipality, served pursuant to Rule 4(j)(2), and thus is not subject to the
provision that requires service expenses to be imposed where a defendant refuses to waive service.  *See* Fed. R. Civ.
P. 4(d)(1) (providing that only parties "subject to service under Rule 4(e), (f), or (h) ha[ve] a duty to avoid
unnecessary expenses of serving the summons").  And there is nothing before the Court showing that Parkinson
actually received the requests to waive service.  Parkinson never concedes that she saw the waivers.  Plaintiff
provided only the street address of the Minier police department to the Court for the mailing of the waivers.  *See*
Not. 1, ECF No. 13; *see* Resp. Mot. Service Costs 4 (noting that the Minier police department's street address was
different than its mailing address).  The Court later found that formal service on the Minier chief of police,
presumably at that same address, was insufficient to serve Parkinson and directed Plaintiff to provide a proper
address at which to serve Parkinson.  Sept. 30, 2021 Order 9–10.  Parkinson provides a valid reason why she did not
want to provide her home address to Plaintiff: he posted a series of videos online in which he stated that he would
follow Parkinson home, threatened that he could "get her," and made lewd gestures outside of her car and
workplace, leading her to fear for the safety of her family.  Resp. Mot. Service Costs 5.  Costs may only be imposed
on a defendant who fails to sign and return a waiver "without good cause."  Fed. R. Civ. P. 4(d)(2).  The Court does
not find that she lacked good cause for failing to sign and return the waivers.  Parkinson also claims that, as a
municipal government employee, she is not subject to waiver costs, citing only to New York and Connecticut
district court cases.  Resp. Mot. Service Costs 4.  Because the Court finds it inappropriate to impose costs on
Parkinson for other reasons, it need not reach this issue.

believes, was filed late.  *Id*.  But as Defendants point out, *see* Resp. Mot. Standing Order 1, ECF No. 66, Plaintiff's response to the motion to dismiss was timely, *see* Parkinson Mot. Dismiss (filed on December 1, 2021); Resp. Parkinson Mot. Dismiss, ECF No. 62 (filed on December 15, 2021); *see also* Civil LR 7.1(B)(2) (providing that a response to a motion to dismiss must be filed within 14 days of service of the motion).  And Plaintiff provides no reason beyond the vague assertion that the Postal Service is unreliable for why he needs 21 days to respond to all filings, nor does he explain why the Court's usual practice of assessing extensions of time on a case-by-case basis is inadequate to address his concerns.  *See* Civil LR 6.1 (providing that a party may seek an extension of time from the court).  In the absence of any such justification, the Court denies the Motion for Standing Order.  Should Plaintiff need more time to respond to an individual filing, he may seek an extension pursuant to Local Rule 6.1.

### IV.     Parkinson's Motion to Dismiss Pursuant to Rule 12(b)(5)

In her motion to dismiss, Parkinson argues that because Plaintiff failed to effectuate timely service of process, the suit must be dismissed against her pursuant to Federal Rule of Civil Procedure 12(b)(5).  Parkinson Mot. Dismiss 6–9.  She acknowledges that she was eventually served, *see id*. at 5; *see also* Parkinson Executed Summons, but asserts that the Court should nonetheless find that the 21-month delay from the February 18, 2020 date of filing of the amended complaint to the November 10, 2021 date of service renders service untimely, *see* Parkinson Mot. Dismiss 2, 5, 9.  While Plaintiff is a *pro se* litigant, Parkinson considers him "an established litigator" and, in reference to the fact that the Court extended the deadline for service several times, suggests that Plaintiff's "reliance on the Court's implicit charity in this case cannot be excused."  *Id*. at 9.

A plaintiff is responsible for ensuring that the summons and complaint are served on a defendant within the allotted time.  Fed. R. Civ. P. 4(c)(1).  "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  *Id*. 4(m).  Upon a showing of good cause by the plaintiff, "the court must extend the time for service for an appropriate period."  *Id*.  However, "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service."  *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998); *see Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) ("[T]he decision of whether to dismiss or extend the period for service is inherently discretionary.").

In its September 30, 2021 Order, the Court used its discretion to extend the service deadline for both Minier and Parkinson to November 30, 2021, Sept. 30, 2021 Order 10, and Parkinson was served on November 10, 2021, *see* Parkinson Executed Summons.  Through her motion, Parkinson suggests that she disagrees with the Court's discretionary choice to give Plaintiff more time to serve her.  However, nothing in her motion convinces the Court to revisit its prior decision.  Even in the absence of a showing of good cause by Plaintiff, the Court was well within its power to extend the deadline for service of process to November 30, 2021.  *See Troxell*, 160 F.3d at 383.  As such, Parkinson's motion to dismiss for insufficient service of process is denied.

## V.        Parkinson's Motion to Dismiss Pursuant to Rule 12(b)(6)

Parkinson also argues that the battery claim brought against her must be dismissed under Rule 12(b)(6) because Plaintiff has failed to allege willful and wanton conduct, as is required under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the

"Tort Immunity Act" or "Act"), 745 ILCS 10/1-101–10/10-101, due to her status as a police

officer. Parkinson Mot. Dismiss 9–11.

### a.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are

unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on

its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, the court must take "[t]he complaint's well-

pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential

Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most

favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

"While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Iqbal*, 556 U.S. at 679.

### b.   Analysis

The Tort Immunity Act is intended "to protect local public entities and public employees

from liability arising from the operation of government." 745 ILCS 10/1-101.1(a). It does so by

granting these parties certain immunities and defenses in civil lawsuits. *Id*; *see Fender v. Town

of Cicero*, 807 N.E.2d 606, 608 (Ill. App. Ct. 2004) ("The Act governs whether and in what

situations local governmental units are immune from civil liability." (quotation marks omitted)).

"Unless a specific immunity provision in the Act applies, a [party covered by the Act] is liable in

tort to the same extent as a private party." *Monson v. City of Danville*, 115 N.E.3d 81, 88 (Ill. 2018). In the Act, "[p]ublic [e]mployee" denotes "an employee of a local public entity," 745 ILCS 10/1-207, which is defined as any local governmental body, such as a county, township, or municipality, *id*. 10/1-206.

Section 2-202 of the Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "'Willful and wanton conduct' . . . means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id*. 10/1-210. "Although [w]illful and wanton conduct . . . consists of more than mere inadvertence, incompetence, or unskillfulness, it need not be an intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Boothe v. Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 800 (N.D. Ill. 2016) (alterations in original) (quotation marks omitted). "Whether . . . conduct is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law." *Liska v. Dart*, 60 F. Supp. 3d 889, 906–07 (N.D. Ill. 2014) (quotation marks omitted).

There appears to be no question that Parkinson, a police officer for a local governmental body, is a public employee under the Act and that she was acting under her authority as a police officer at the time of the conduct at issue. *See, e.g*., *Boothe*, 190 F. Supp. 3d at 800 (discussing a municipal police officer's conduct while making an arrest in the context of the Act); *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (same). And she does not dispute that Plaintiff has sufficiently alleged the elements of common-law battery in Illinois. *See Wilson v.*

11

*City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (defining battery in Illinois "as 'the unauthorized touching of . . . [another] person'" (quoting *Curtis v. Jaskey*, 759 N.E.2d 962, 964 (Ill. App. Ct. 2001))); Am. Compl. 4 (alleging that Parkinson grabbed Plaintiff's wrist, twisted it, and pulled it down such that Plaintiff fell to the ground).  Rather, the question the Court must resolve is whether Plaintiff has adequately alleged willful and wanton conduct.

The Court finds that Plaintiff has plausibly pleaded in the amended complaint that Parkinson acted willfully and wantonly while she was arresting him.  Plaintiff states that, after Parkinson told Plaintiff that if he removed the videos he would not be arrested, he said, "fuck off bitch," and she reacted by "bec[oming] immediately angry and twist[ing] [his] injured wrist pulling down till all [he] could do was fall to [his] knees eventually to [his] face [sic]."  Am. Compl. 4 (quotation marks omitted).  At that point, Plaintiff had already told Parkinson that his wrist had recently been repaired.  *Id.*  Moreover, there is nothing to suggest Plaintiff was physically resisting arrest or required excessive force to subdue—Parkinson knew that Plaintiff was disabled and required a cane to ambulate, and Hodgson had already ordered her to remove handcuffs from Plaintiff's wrists.  *See id.*

Taking Plaintiff's allegations as true, it is plausible to infer that Parkinson, in her anger at Plaintiff for calling her a "bitch" or for refusing to take down the videos, deliberately or with conscious disregard for Plaintiff's safety twisted the wrist she knew was injured and pulled down, forcing him to fall to the ground.[4]  This could constitute willful and wanton conduct.  *See Boothe*, 190 F. Supp. 3d at 794, 800–01 (finding that there was a genuine issue of material fact as to whether a police officer's conduct was willful and wanton where he performed a takedown of

---

[4] Plaintiff's later allegation that Parkinson stated that the Minier chief of police "told her she could put her hands on [Plaintiff] anytime because a judge[] . . . had made clear [Plaintiff] would be the one to pay," Am. Compl. 5, bolsters this inference because, if true, it shows that Parkinson did not feel constrained in her actions by the possibility of facing legal liability for using physical force against Plaintiff.

a student and continued to knee her in the back once she was subdued because a reasonably jury could conclude that the officer's actions were excessive and inconsistent with what was necessary to execute and enforce the law); *cf. Smith*, 242 F.3d at 740, 744 (holding that police officers were immune from liability for battery where they pulled over a motorist who had initially failed to stop and then pushed him against the vehicle and pinned his arms behind his back to handcuff him because these were "reasonable actions to take when arresting a potentially dangerous suspect").

The Court therefore finds that the amended complaint states a claim for battery against Parkinson, and her motion to dismiss under Rule 12(b)(6) is denied.

## CONCLUSION

For the foregoing reasons, Defendant Jennifer Parkinson's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), ECF No. 58, is DENIED; Plaintiff Kenneth Simmons's motion for costs of service, ECF No. 61, is DENIED; Plaintiff's motion for a standing order, ECF No. 63, is DENIED; Plaintiff's motion to consider, ECF No. 65, is DENIED; Parkinson and Defendant Village of Minier's motion to strike Plaintiff's motion to consider, ECF No. 67, is DENIED; Plaintiff's motion to consider, ECF No. 75, is DENIED; and Defendants' motion to strike Plaintiff's motion to consider and to bar future such motion practice, ECF No. 76, is DENIED.  Parkinson is directed to file an answer to the amended complaint, ECF No. 12, within 14 days.  *See* Fed. R. Civ. P. 12(a)(4)(A).

Entered this 13th day of September, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE